IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dytavis Hinton, | ) | Case No. 8:15-00273-GRA-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 23.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28
U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for
relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on January 15, 2015.[1]  [Doc.
1.]  On May 4, 2015, Respondent filed a motion for summary judgment and a return and
memorandum to the Petition.  [Docs. 22, 23.]  On the same day, the Court filed an Order
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the
summary judgment procedure and of the possible consequences if he failed to adequately
respond to the motion.  [Doc. 24.]  Petitioner's response in opposition was filed on the
docket on August 17, 2015.  [Doc. 33.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on January 15, 2015.  [Doc. 1-2 (envelope stamped as
received by prison mailroom on January 15, 2015).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be dismissed.

## BACKGROUND

Petitioner is incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for York County. [Doc. 1 at 1.] On July 12, 2011, represented by Harry Dest ("Dest"), Petitioner waived presentment to the grand jury of indictments charging him with attempted murder, burglary in the first degree, attempted armed robbery, and criminal conspiracy and pled guilty to all charges. [App. 1–42, 292–306.[2]] Petitioner received a sentence of twenty years imprisonment on the attempted murder, burglary in the first degree, and attempted armed robbery charges and five years imprisonment on the criminal conspiracy charge, all sentences to run concurrently. [App. 40.]

**Direct Appeal**

Petitioner filed a notice of appeal. [Doc. 22-6.] However, the South Carolina Court of Appeals filed an Order dismissing the appeal on August 5, 2011 because Petitioner failed to identify any issues that were reviewable on appeal from his guilty plea. [Doc. 22-7.] Remittitur was issued on August 23, 2011. [Doc. 22-8.]

---

[2]The Appendix can be found at Docket Entry Numbers 22-1 through 22-5.

2

**PCR Application**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on April 24, 2012.  [App. 43–49.]  Petitioner raised the following grounds for relief, quoted substantially verbatim:

(a)     Ineffective Assistance of Counsel

(b)     Violation of Constitutional Rights

(c)     Improper Guilty Plea

[App. 44–45.]  In support of his grounds for relief, Petitioner provided the following factual allegations, quoted substantially verbatim:

(a)     Counsel Failed to investigate

(b)     Police Obtained evidence in Violation of Rights

(c)     Intelligent Voluntary not knowing about plea

[App. 45.]  The State filed a return on June 29, 2012.  [App. 50–55.]  On December 4, 2012, Petitioner, represented by Tricia A. Blanchette ("Blanchette"), filed an amendment to his PCR application, raising the following allegations:

1.     Ineffective assistance of counsel for failure to properly prepare and investigate, specifically, but not limited to the following:

a.     Failure to completely review and discuss discovery with Applicant.  Failure to ensure that Applicant had a complete copy of the discovery materials.

b.     Failure to contact and utilize witnesses.

c.     Failure to investigate crime scene and evidentiary reports (firearm, ballistics, latent print, gunshot residue, etc.).

3

     d.    Failure to investigate inconsistencies in witness statements.

     e.    Failure to review statements attributed to Applicant with Applicant prior to his plea and/or in preparation of trial.

2.    Ineffective assistance of counsel for advising Applicant that he would receive a split or suspended sentence and informing Applicant to not be concerned with all the charges he was facing, which resulted in an involuntary guilty plea.

3.    Ineffective assistance of counsel for not allowing Applicant's family to speak on his behalf at the plea hearing.

4.    Ineffective assistance of counsel for failure to file a Motion for Reconsideration.

5.    Ineffective assistance of counsel for failure to properly preserve issues for appeal as was admitted in the Rule 203(b), SCACR, Explanation.

[App. 56–58.] Petitioner, through Blanchette, filed another amendment on May 13, 2013, raising the following allegation:

1.    Ineffective assistance of counsel for failure to move to quash Applicant's arrest warrant for murder (K-617623) under State v. Bonner, 330 N.C. 536, 411 S.E.2d 598 (1992).  Ineffective assistance of counsel for allowing the State to present the dismissal of the murder warrant as part of the plea deal to the court.  Plea Transcript p. 4.

[App. 59–60.]

An evidentiary hearing was held on August 15, 2013, at which Petitioner was represented by Blanchette.  [App. 61–171.]  Following the hearing, Petitioner, through Blanchette, submitted a memorandum of law in support of his allegations.  [App. 263–66.] On October 16, 2013, the PCR court filed an order denying and dismissing the PCR

application with prejudice.  [App. 267–84.]  Petitioner, through Blanchette, filed a motion for rehearing pursuant to Rule 59(a), SCRCP, and/or motion to alter or amend pursuant to Rule 59(e), SCRCP [App. 285–89], which the PCR court denied on November 25, 2013 [App. 290–91].

Petitioner filed a notice of appeal in the Supreme Court of South Carolina.  [Doc. 22-9.]  Subsequently, Carmen V. Ganjehsani ("Ganjehsani") of the South Carolina Commission on Indigent Defense filed a *Johnson*[3] petition for writ of certiorari on Petitioner's behalf in the Supreme Court of South Carolina.  [Doc. 22-10.]  The petition asserted the following as the sole issue presented:

> Whether the PCR court erred in finding that plea counsel provided effective assistance of counsel where plea counsel failed to move to quash the arrest warrant for murder against Petitioner where a surviving co-perpetrator cannot be charged with murder when another co-perpetrator is killed by the intended victim of the crime?

[*Id.* at 3.]  At the same time she filed the *Johnson* petition, Ganjehsani submitted a petition to be relieved as counsel.  [*Id.* at 21.]  Petitioner then filed a pro se brief alleging the following issue, quoted substantially verbatim:

> Whether Counsel was Ineffective for failing to Investigate case before Advising Applicant to plead guilty?

[Doc. 22-11.]  The court denied the petition and granted counsel's request to withdraw on November 20, 2014 [Doc. 22-12] and remitted the matter to the lower court on December 8, 2014 [Doc. 22-13].

---

[3]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.  *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on January 15, 2015.  [Doc. 1.]

Petitioner raises the following grounds for relief, quoted substantially verbatim, in his

Petition pursuant to 28 U.S.C. § 2254:

|  |  |
|---|---|
| **Ground One**: | Ineffective Assistance of counsel/Intelligent Voluntary not knowing about plea |
| *Supporting Facts*: | GROUND ONE "A" |

### ARGUMENT

**The PCR court erred in finding that plea counsel provided effective assistance of counsel where plea counsel failed to move to quash the arrest warrant for murder against Petitioner where a surviving co-perpetrator cannot be charged with murder when another co-perpetrator is killed by the intended victim of the crime.**

Petitioner's plea counsel was ineffective in failing to quash the arrest warrant for murder where Petitioner could not have been charged with murder of his alleged accomplice who was killed by a third party.  The State only dismissed the murder charge against Petitioner as a part of the plea agreement.  The murder charge should have been quashed independently of any plea agreement.  If the murder charge had been quashed separate of any plea agreement, then Petitioner could have made a decision to go to trial on the remaining charges.  Petitioner could have also possibly obtained a more favorable plea offer from the State had the murder charge already been dismissed and rendered unavailable to be used as leverage by the State.  Therefore, the PCR court erred in finding that plea counsel had not provided ineffective assistance of counsel.

\*\*\*

Plea counsel was therefore ineffective for failing to move to quash the murder arrest warrant issued against Petitioner.  The PCR court believed plea counsel's failure to quash the murder arrest was of no consequence since the State

6

ultimately dismissed this charge. The State, however, only dismissed this charge as a result of the negotiated plea agreement where Petitioner agreed to plead guilty to attempted murder, first degree burglary, attempted armed robbery, and conspiracy in exchange for the dismissal of the murder charge. Had plea counsel moved to quash the murder arrest warrant, Petitioner would not have been facing a trial on this charge and Petitioner may have decided to proceed to trial on the remaining charges. In addition, Petitioner may have been able to have obtained a more favorable plea offer from the State if the murder charge was no longer a bargaining chip that could be used by the State.

Petitioner is accordingly entitled to the grant of post-conviction relief where his plea counsel should have sought a dismissal of the pending murder charge against him where a co-felon cannot be guilty of murder when an intended burglary or robbery victim shoots and kills his accomplice. Petitioner is entitled to the vacation of his guilty plea and a new trial.

GROUND ONE "B"

ARGUMENT

My contention is that lower court has unreasonably applied the Hill v. Lockhard, 474 U.S. 52 (1985) when it concluded I failed to prove the first prong of Strickland v. Washington, 466 U.S. 668 (1984) that counsel performance was unreasonable. Thus, the decision is not supported by record when my expert testified at hearing (App. PG 110; lines 6–25) and counsel own admission at hearing that

> "Now it is true we did not go beyond that in our investigation. We did not go and look at other things because I felt that point in time that our best efforts could be used to mitigate this."
> App. PG 153; lines 13–16

As such, the order (App. PG 279) fails to address whether expert at hearing testimony shows counsel, who elected to obtain a expert to convince court to be lenient on me was unreasonable within professional standards.

> " . . . and I did retain the services of Dr. Kenneth Marsh, who is a clinical Psychologist out of

7

> Charlotte who basically analyzes or evaluates
> People for two things One, where to place them
> within federal system, when -- Generally does
> work for the federal system . . ."
> App. PG 153; lines 16–21

Accordingly, my argument is supported by Bagwell v. State, 2014 WL 4212681; Taylor v. State, 745 S.E.2d 97 (2013) to find counsel is not reasonable when there is forensic evidence which does not in the least which establishes material facts for trial. Accordingly, as noted at hearing that statements from the Thomas brothers were inconsistent with crime scene. (App. PG 112; lines 2–5) What my expert said at hearing shows that counsel had all of these statements and reports, and if counsel conducted an investigation he would have known the weakness of state case and coupled with fact police investigation was faulty. See Ard v. Catoe, 642 S.E.2d 590 (2007); Hinton v. Alabama, 134 S.Ct. 1081 (2014 Therewith, my analysis begins as follows:

<u>Actual Innocence</u>:

       To fully analyze both prongs of the Hill test, it is important to judge all evidence in state possession at time of guilty plea and at hearing. Hence, if this case went to trial the state told court it will show me and co-defendant went to rob these men (App. PG 11; lines 7–16) but this is contradicted by my testimony given to police that co-defendant was observed entering Rv (App. PG 261) and he did so after noticing his gun was gone and other testimony confirming co-defendant condition (App. PG 69; lines 20–25) While state may down-play this testimony, what it can not overlook is fact that as state said:

> " . . . Mr. Burris was shot a number of times and
> killed and died in the stairwell of the - - - as he
> fell into the stairwell of the Rv. This defendant,
> Mr. Hinton, was also shot twice in the abdomen
> and in the side. He ended up trying to run out of
> the Rv at that point . . ."
> App.PG 12; lines 11–15

Now this is contradicted by testimony which says that:

> " . . . they measure that, and those measurement
> are identical to what the laser trajectory is. It

8

> could not have been done in the trailer unless he
> would have been at the top.    There's no
> indication that he was on top . . ."
> App. PG 134; lines 4–8

This statement contradicts any notion of me being inside trailer as Prosecution alleges, inter alia, in order the court ruled that:

> "This court finds . . . . that differences are
> common places in investigations and none of
> those relied upon by the expert would have
> resulted in change in the outcome."
> App. PG 279

Contrary to order of court, it is not a matter of differences in terms of Police investigation of case.  What it comes down to[] is Police, and counsel made mistakes in this investigation when key persons were not communicated with (App. PG 110; lines 4–24) and it has also been shown that witnesses statements did not match with forensic evidence.  Similarly, what state has as a consequence overlooked themselves, is that counsel testified that he never did an investigation like what my expert said should have been done.  (App. PG 153; lines 13–14).  Conversely, it is not that my expert questions what Police did, because he said that:

> "Well, I found there was no indication whatsoever
> that this case had been investigated. Everything
> that I saw in the CD were items, documents
> received from the Police department . . . "
> App. PG 110; lines 6–9

Then PCR court ruling is refuted by record, as the Police investigation was not being questioned but trial counsel.  Who as evidence shows is unrefuted, counsel relied solely on the State documents and failed to conduct his own independent investigation.  Likewise the state and court, seems to suggest since I admitted to[] counsel I committed this offense then trial counsel reasonably felt no investigation was necessary.

> Q: But wouldn't you agree with me that its not
> necessary once Mr. Hinton admits to his Purpose
> in that?
> A:  I disagree, and the reason I disagree is the
> attorney and investigators that's representing an

> individual have the duty and the obligation to
> make sure that his rights are Protected, that the
> case is investigated . . ."
> App. PG 135; lines 7–13

Once in accordance with Strickland, id at 691, Hinton, id, the
court fails to consider that even under Hill, id trial counsel must
conduct an independent investigation into law and facts of
case.  See, Mcknight v. State, 661 S.E.2d 354 (2008); Padilla
v. Kentucky, 559 U.S. (2010) The court ruled

> " . . . as counsel actions in this case were heavily
> influenced  and  Guided  by  the  information
> Provided by applicant . . ."
> App. PG 281

What this order Proves is that counsel did nothing before or
after speaking with me and this is not consistent with Padilla
court ruling.  Furthermore, despite my admission of guilt to
counsel, it still does not negate his responsibility to investigate
case when he acknowledged when I said

> . . . was a statement that he Gave to Marcus
> Thompson while he was in the hospital which he
> said he tried to stop Mr. Burris . . . but where he
> says "I knew he was Going to rob I knocked on
> the door" and that's when he sees what's Going
> on inside."
> App. PG 151; lines 19–25

Considering counsel was aware of these statements from me,
it requires analyzing why no other investigation was conducted
by  counsel  who  testified  his  friends  gave  statements
contradicting his version of events (App. PG 152; lines 21–25;
PG 153; line 1–12) but the statements  contradict  counsel
testimony in all respects (App. PG 236, 231, 232) When as
herein Branden statement says "I heard that Twhiz tried to stop
Mann going into the R/V. I also heard that Man had asked to
hold Twhiz Gun to Pul back in my car before they went into the
money" so it is clear counsel misinformed me about statements
(App. PG 152; lines 21–25) and did not look at these
documents based on testimony at hearing.  As a consequence,
the record was fully developed to refute any notion my friends
testimony will not be favorable to me.  Similarly, in looking at
statement by Mr. Page will not be admissible and constitute as

hearsay and nor is testimony admissible based on his opinion or belief. For this reason, it is my contentions that counsel as an experienced trial attorney should have been aware of this. Even considering fact that Devon Braden does not remember giving me the keys, is not a significant fact which Proves my involvement in this case.  What is even more critical of counsel investigation, is fact that there are no Gsr kits or ballistic reports (App. PG 88; lines 18–25; PG 89; lines 1–6).  This order disregards the trial lawyer obligation to conduct meaningful investigations, and in light of this when counsel testified that

> Q: So you understand the concept of trajectory, ballistics, things of that nature?
> A: I do have.  Yes, a basic understanding Just by virtue of the fact that I've been a criminal defense lawyer for 23 years.  Yes.
> App. PG 150; lines 1–5

So if court and respondent, gives due consideration of trial counsel testimony and find him credible.   Then when respondent said I was shot inside R/V (App. PG 12; lines 13–17) counsel if he had any knowledge of trajectory had an obligation as my lawyer to inform court himself that forensic evidence submitted does not support what Prosecution is saying. Accordingly, when court ruled Mr. Guerrette testimony was not credible and that counsel is credible overlooks all the testimony showing inconsistencies and that counsel should have had blood tested in the stairwell (App. PG 142; lines 1–3) and it is likewise important to note the Police did not take fingerprints or DNA testing (App. PG 137; lines 19–25; PG 138; lines 1)  Even Mr. Guerrette testified counsel should not have relied solely upon me in this situation when it is possible my motives were to[] avoid Getting more time (App. PG 135; lines 13–15) but despite all of this the lack of investigation was a critical aspect of this case and counsel testimony indicates that he relied solely upon my testimony or what I told him.  None of the cases cited by state allows counsel to[] solely rely on what his client tells him.  Were this the case, then once counsel knew of my limits on revealing anything to him (App. PG 150; lines 21–23) and it is unclear of what counsel did during this time.  Now what is clear, that once counsel says I admitted to this crime he no longer sought to investigate case and even went so far as he said working on Getting Judge to be lenient in sentencing. (App. PG 150; lines 21–24; PG 153; lines

13–25) Contrary to respondent or court views, there is no dispute I was at scene of crime and the only disputable facts are in what my role was as well as where Prosecution is placing me in trailer, and therefore for counsel not to conduct an investigation and misinform me as he did concerning what Page & Braden statement say – is a break-down in what is constitutionally required.

Petitioner further argue that the PCR Court and the Supreme Court rulings were contrary to clearly established federal laws SEE: <u>Strickland v. Washington</u> 466 U.S. 668: <u>Brady v. U.S.</u> 397 U.S. 742: <u>Boykin v. Ala.</u> 395 U.S. 238 and <u>Hill v. Lockhart</u> 474 U.S. 52 and <u>the 6th Amend. to the U.S. Const.</u>

Moreover, Petitioner argue that not only were the State Courts rulings was contrary, they were objectively unreasonably regarding the facts of his case SEE <u>28 U.S.C. Section 2254 (d) (1) (2): William v. Tayler</u> 529 U.S. 362: <u>Carey v. Musladin</u> 549 U.S. 70: <u>Frazer v. S.C.</u> 430 F3d 696: <u>Summer v. Mata</u> 449 U.S. 539; <u>Humphries v. Ozmint</u> 397 F2d 206 and <u>McHone v. Polk</u> 392 F3d 691: <u>Oken v. Corcoran</u> 220 F3d 259

Which fairminded jurist would agree, that the State courts decisions were incorrect SEE <u>Richter</u> 131 S.Ct. at 786

Petitioner further argue that from the records its clear that the likelihood of a different result is substantial, as opposed to conceivable SEE: <u>Strickland</u> 466 at 693. Petitioner also argue that its clear that the courts credibility judgments is stark and clear.

thus, based upon the above arguments Petitioner is entitled to a full and fair evidentiary hearing per <u>2254 (e) (2)</u> and <u>Keeney v. Tomayo-Reyes</u> 112 SCt. 1715.

[Doc. 1 at 5–22.]

As stated, on May 4, 2015, Respondent filed a motion for summary judgment. [Doc. 23.] On August 17, 2015, Petitioner filed a response in opposition. [Doc. 33.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

>A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

14

> admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

15

jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).   Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (I) there is an absence of available State corrective process; or

16

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts,

19

the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation,'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, a federal court may consider claims that have not been presented to the highest state court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.   A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*,

21

523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

22

those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Ground One "A"**

In Ground One "A", Petitioner argues plea counsel was ineffective for failing to move to quash the arrest warrant for murder separate from the plea negotiation process because Petitioner argues he could not have been charged with the murder of his accomplice because his accomplice was killed by a third party, the victim.  When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[5]  *Richter*, 131

---

[5]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Court cautioned that "[j]udicial scrutiny of counsel's performance

S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541

---

must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

   In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59–60.

U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether

it is possible for fairminded jurists to disagree that the arguments or theories supporting the

state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court addressed plea counsel's performance under the standards set

forth in *Strickland* and *Hill v. Lockhart*, 474 U.S. 52 (1985).  [App. 278–79.]  With respect

to Ground One "A", the PCR court found,

> Applicant claims Counsel was ineffective for failing to move to quash his arrest warrant for murder under State v. Bonner, 330 N.C. 536, 411 S.E.2d 598 (1992).  First, Bonner is a North Carolina case and therefore, is not binding.  Second, Bonner is concerned with the "felony murder" rule and whether a defendant can be convicted of the murder of a co-defendant at the hands of his adversaries.  In South Carolina, the law is unsettled as to whether a defendant can be charged with the death of a co-defendant during the commission of a felony at the hands of his adversaries.  Counsel testified he is licensed in both North Carolina and South Carolina, has practiced criminal defense for twenty-three years and has handled hundreds of murder case.  He also testified he is very familiar with State v. Bonner.  He thoroughly explained that South Carolina has yet to resolve the "felony murder" rule.  He further testified that he did not believe the State would pursue the murder charge because Applicant was also charged with Burglary, 1st degree, which carries the same maximum penalty as murder: life imprisonment.  Moreover, this charge was dismissed by the State and had no influence on the very experienced circuit court judge's acceptance of the negotiated plea agreement.  This Court finds Applicant has failed to meet his burden of proving that had Counsel moved to quash the murder charge under State v. Bonner, he would not have pled guilty, but insisted on going to trial.

> In sum, Counsel's representation did not fall below the reasonable professional standard.  Bennett v. State, 371 S.C. 198, 204 S.E.2d 673 (2006).  Applicant has the burden of proving to the Court that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different.  *See, e.g.* Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1998).  Applicant has not satisfied this

burden.  Similarly, Applicant has not shown a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  See Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

[App. 282–83.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*.  At his guilty plea hearing, Petitioner agreed with the following recitation of what occurred on September 21, 2010:

> Mr. Thompson - Yes, Your Honor, if it please the Court. This occurred on September 21st of 2010 in the City of Rock Hill here in York County.  About one o'clock that morning --- This incident was located at The Money in downtown Rock Hill --- The Money is a local bar and club --- The Defendant, along with another Co-Defendant, Demorrio Burris, was with a group of folks and they actually had gone to McDonalds that night initially and at The Money, the band Parmalee was playing who ended up being the victims in this particular case.  The band's composed of Matthew Thomas, Scott Thomas, Barry Knox and Josh McSwain.  They had just finished their gig at The Money. They travelled from Greenville, North Carolina.  They're --- When they travel, they travel in a large RV where they would end up spending the night in order to make the various gigs

26

that they go to.  This particular night they had their RV with them.  They intended on spending the night in the RV that night in the parking lot of The Money.  The parking lot is a large parking lot; It's gravel.  The band had finished.  Two of the members had gone back, Matthew and Scott both went back and they're brothers, they went back into the RV.  The sound guy from The Money, a guy named Michael Walch, he also went with them and they were packing a few things up and just settling down after their --- after their gig in the RV.  The other band members were still in The Money.  The Defendant had purchased a gun just fifty-some days prior to this, legally.  He was allowed to purchase the gun at the time.  The pistol he had he had brought with him that night, and apparently --- According to his statement he ultimately gave --- put it in the vehicle that they were travelling in, although that was not his vehicle.  The two Defendants left the group that had being going back and forth from McDonalds to The Money and were waiting on some food to be made for them at McDonalds.  When they left then, they went to the RV out back.  The two Defendants, ultimately Mr. Burris and this Defendant, Mr. Hinton, put bandannas across their faces, covering their nose and their mouth, also had on baseball caps to help hide their identity.  They went back to the RV together.  Mr. Burris had the gun at that point in time.  They knocked on the door.  The band members thought it was the other band members wanting to get in, because they had locked the door.  When they opened the door, the two Defendants rushed in at that point.  Mr. Burris put the gun to the head of Matthew Thomas and demanded his money at that point in time.  There's basically two or three steps going into the RV.  Going up those steps had the gun at Mr. Thomas's head.  His brother Scott was actually in one of the back rooms of the RV at that point.  Michael was also out in the area that he could see what was happening at that point.  As they demanded money off of them Mr. Burris fired his gun into the ground or into the floor of the RV ---

     <u>The Court</u> - All right, this Defendant's gun.

     <u>Mr. Thompson</u> - This Defendant's gun.  Right.  It was not this Defendant, but Mr. Burris did it, fired into the floor demanding, you know, to I guess enforce his demands that he wanted more money --- that he wanted the money now and he was serious.  They attempted to give them their wallets, but at that point that's when Scott came out of the back and he had

armed himself with his own pistol that he had a concealed weapon's permit to carry. He came out with the pistol, ultimately shooting ensued. Mr. Burris was shot a number of times and killed and died in the stairwell of the --- as he fell into the stairwell of the RV. This Defendant, Mr. Hinton, was also shot twice in the abdomen and in the side. He ended up trying to run out of the RV at that point, made it out in the parking lot where he dropped, his bandanna lying under him at the time. I would present to the Court State's Exhibits 1 through 7 which I've showed to the defense and are photographs that were handed over in discovery, and I think they're fairly self-explanatory showing the RV and the positioning of where it was in the parking lot. The actual door to it that they went --- You actually had to go around to the side where there was kind of a culvert, so it wouldn't be a side people would normally be walking on. They would be walking on the other side where the driver's side of the RV was. You could see in the doorstep where Mr. Burris was found when the officers arrived and the pistol that was fired by him that was in there as well. He got off several rounds as well shooting at Scott Thomas and shot Scott three times, once in the chest, once in the abdomen and once in the buttocks. It caused serious damage to Scott who also almost died at the scene. He was airlifted to Carolina's Medical Center and has had numerous surgeries and other physical therapy and things of that nature to try and get him back together. He's in the Courtroom today and has come a long way but still has quite a way to go. When it initially happened, calls went out immediately then the to police. There were policemen actually very close nearby. One was actually working security at McDonalds off duty and came running through. Another one happened to be just a block or so away and he came there immediately. They found the Defendant, Mr. Hinton, lying on the ground. This is the first thing they noticed when they arrived. As they approached him, they began to ask what had happened, if he knew who had shot him, because it was obvious that he'd been shot. He said he did not know, but that he was shot by two white males who had robbed him and that they had left in a white car, and so officers started calling out at that point to try to search for a white car for two white males. As well, someone yelled that they had seen a black man running. The police said they're looking for anyone else who was running as well. Ultimately though as they discovered that there was injuries that were serious within the trailer, they noticed initially that the --- that Mr. Burris was dead on the steps of the trailer and that up inside the trailer

> Scott Thomas appears to be going in and out of consciousness. His brother, Matt, gave the officers the gun, was able to tell the officers what had just happened to him and was able to describe the Defendants and ultimately identify Mr. Hinton out in the parking lot as the person, the second assailant in the attempted robbery. The police arrested him at that point in time and then that, of course, brings us to here that --- Of course, the trailer being the burglary and that was their dwelling that evening, the attempted armed robbery, the attempted murder of Scott Thomas and the conspiracy to rob them at that time.
>
> The Court - All right. Mr. Hinton, is that what happened that night?
>
> Mr. Hinton - Yes, sir.

[App. 9:22–14:21.] Petitioner also testified at the guilty plea hearing that no one promised him anything, held out any hope of reward, or threatened him in any manner to make him plead guilty. [App. 8:8–11.] Petitioner had the opportunity to exercise his right to a trial, which he declined after an extensive plea colloquy during which the plea judge warned Petitioner of the rights he was waiving by pleading guilty. [App. 5–14.] Moreover, in his Petition, Petitioner does not allege that he would have gone to trial if the murder charge had been quashed independently of any plea agreement; instead, he alleges he "could have made a decision to go to trial on the remaining charges" and he "may have decided to proceed to trial on the remaining charges." [Doc. 1 at 6, 12.] Such allegations fail to establish a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. 52, 59 (1985). Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not

entitled to habeas corpus relief on this ground. Accordingly, Respondent's motion for summary judgment should be granted with respect to Ground One "A".

**Ground One "B"**

In Ground One "B", Petitioner argues plea counsel was ineffective for failing to adequately investigate.[6]  With respect to Ground One "B", the PCR court found,

> The thrust of Applicant's claims relate to Counsel not conducting a full investigation of the crime scene.  An expert witness, Mr. Guerette, testified on Applicant's behalf and discussed inconsistencies in numerous State exhibits and witness statements, using documents of the investigative file in support.  This Court, in analyzing each point raised, finds that differences are commonplace in investigations and none of those relied upon by the expert would have resulted in a change in the outcome.  (Even Applicant's statements to law enforcement varied.)  In preparation for his testimony, the expert acknowledged never having discussed with local law enforcement their investigation or reading the guilty plea transcript.  In the light of all of the facts and testimony presented, Counsel did more than an adequate investigation

---

[6]In Ground One "B", Petitioner references a failure to investigate both the crime scene and witness statements.  [Doc. 1 at 13–22.]  Accordingly, this Court will review the PCR court's discussion of these separate claims together.  Further, the Court does not construe the Petition as raising an independent claim of actual innocence, but instead construes the argument beginning on page 14 of the Petition as supportive of Petitioner's Ground One "B".  However, to the extent Petitioner is attempting to raise an independent claim of actual innocence, "the Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief: 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).  Further, some cases suggesting that it may be unsettled whether a freestanding claim may exist also suggest that the existence of such a claim may be limited to capital cases.  *See Hunt v. McDade*, 205 F.3d 1333, at *2 (4th Cir. 2000) (unpublished table decision) ("The *Herrera* Court's analytical assumptions recognizing the possibility of a persuasive freestanding claim of actual innocence may be limited to capital cases because those assumptions were made in the context of evaluating the constitutionality of the petitioner's execution." (citations omitted)).

of the facts to present to Applicant for his consideration before entering his guilty plea. Accordingly, Applicant has failed to demonstrate that the outcome of the proceeding would have been different. *See* Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1998). Applicant has failed to meet his burden as to this allegation.

\*\*\*

Applicant claims Counsel failed to investigate inconsistencies in witnesses' statements and failed to review statements attributed to Applicant prior to his guilty plea.

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066 (1984).

As stated prior, Counsel testified Applicant told him early in the case that Applicant joined Burris for the purpose of robbing Victims. Once Applicant admitted his involvement in these crimes, Counsel was not required to further investigate any more statements as such effort would be fruitless. Clearly, Counsel's actions in this case were heavily influenced and guided by the information provided by Applicant. As such, Applicant has failed to prove Counsel's actions fell below the reasonableness standard or that the outcome would have changed had Counsel more thoroughly investigated or discussed the various statements with Applicant.

[App. 279–82.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the

Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*.  At the PCR hearing, plea counsel testified that Petitioner told him "not too far into the case that he did go inside the trailer and he did go in there to help his friend Mr. Burris commit a robbery." [App. 150:22–25.]  Plea counsel further testified that he "felt at that point in time that [his] best efforts could be used to try to mitigate this."  [App. 153:14–16.]  The PCR court found plea counsel's testimony to be very credible.  [App. 278.]  "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Strickland*, 466 U.S. at 691.  Thus, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on this ground. Accordingly, Respondent's motion for summary judgment should be granted with respect to Ground One "B".

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

32

Jacquelyn D. Austin
United States Magistrate Judge

December 30, 2015
Greenville, South Carolina